## GOVERNMENT OF THE VIRGIN ISLANDS, IN THE INTERESTS OF M.B., Minor/Appellant

D.C. Crim. App. No. 1994-111
T.C. Fam/Juv No. 108/1994

District Court of the Virgin Islands

Div. of St. Thomas

December 8, 1995

Amended by Order dated January 1, 1996

CHARLOTTE POOLE DAVIS, ESQ., *for Appellant*

JOEL H. FELD, ESQ., Assistant Attorney General, Department of Justice, *for Appellee*

MOORE, *Chief Judge*, District Court of the Virgin Islands; FINCH, *District Court Judge for the District of the Virgin Islands*; and ANDREWS, *Territorial Court Judge*, Division of St. Croix, Sitting by Designation.

## OPINION OF THE COURT

This case is before the Court on appeal from an order transferring the prosecution of a minor ["M.B." or "appellant"] from the Family Division to the Criminal Division of the Territorial Court to be tried as an adult on the charges of first degree murder (two counts: premeditated and felony-murder) and first degree robbery.

## BACKGROUND

On April 10, 1994, Murray Callen was shot and killed. M.B., a minor then seventeen years old, was arrested on May 7, 1995, for acts of delinquency which would constitute first degree murder and unlawful possession of a firearm if committed by an adult. On May 9, 1994, appellant appeared before a judge of the Family Division for a probable cause and advice of rights hearing on the juvenile matter. The court had before it the affidavit of Police Corporal Roberto Lima, which was supplemented by oral testimony from Officer Lima.[1] Lima gave evidence based on results of the police investigation that another minor, G.C., had confessed to

---

[1] The affidavit is at Appellant's Appendix ["App."] A; Corporal Lima's testimony is at App. B.

the shooting, that G.C. had identified M.B. by his nickname as having participated with him in the murder, and that M.B. had also confessed. Officer Lima also had interviewed a "concerned citizen" who identified M.B. and G.C. as being involved in Callen's murder. Based on this evidence, the judge found probable cause to believe both that the charged acts of juvenile delinquency had been committed and that M.B. was one of the perpetrators of the delinquent acts.[2]

On May 11, 1994, the Government filed a juvenile complaint against M.B. for acts, which, if done by an adult, would constitute "Murder 1st, Robbery 1st, Robbery 2nd and Unlawful possession of a Firearm"[3] and moved to have appellant transferred from the Family Division "to a court of competent criminal jurisdiction," that is, the Criminal Division of the Territorial Court, for trial as an adult.[4] The Police Department and the Department of Human Services ["DHS"] filed reports with the court before the hearing, as required by law; the DHS report was prepared by Mr. Vaughn Walwyn and the police report was done by Officer Merlin Wade Christian.[5] The DHS pre-transfer summary assessed M.B.'s social history and the statutory factors the judge needed to consider in evaluating whether to transfer appellant for trial as an adult. DHS reported that M.B. had no prior contact with the juvenile system, that he posed no threat to the community, that he was a good candidate for rehabilitation, but also, that no programs or facilities for adequate rehabilitation were available in the Virgin Islands. Taking all these considerations into account, DHS recommended transfer of M.B. to the adult justice system. The Police Department's summary report described the nature of the crime and recited the facts which would support a finding of probable cause to believe that the appellant had committed it.

---

[2] App. B at 7. Appellant was conditionally released to his parent's custody after a detention hearing was held on May 24, 1994. App. H.

[3] App. C. On May 23, 1994, an amended juvenile complaint was filed, which appears to be identical except that Merlin Wade Christian was substituted as petitioner for R. Lima. App. D.

[4] App. E.

[5] Both are contained in App. I.

On July 1, 1994, a hearing was conducted to determine whether appellant should be tried as an adult. The Government established the minority of appellant by the testimony of an official from the Office of Vital Statistics, who testified that he was born on May 12, 1976.[6] Mr. Walwyn, the author of the DHS report also testified and was cross-examined about the statutory factors DHS is required to evaluate in contemplation of the transfer of a minor to adult court. Although the Government did not call the author of the police report to testify, the record reflects that the Juvenile Officer, Merlyn Wade Christian, was "available to be questioned."[7] Since the judge hearing the motion to transfer was the same judge who had found probable cause at the May 9th advice of rights, the Government asked the court to incorporate into the transfer hearing this earlier finding. The judge not only took judicial notice of his earlier finding of probable cause, over appellant's objection that appellant had not been represented by counsel at the initial hearing,[8] but as well read into the record the factual basis for finding probable cause set forth in the police summary report.[9]

In an order issued July 14, 1994, the court transferred M.B. to be tried as an adult "for Murder in the First Degree and Robbery."[10] Based upon "consideration of the witnesses' testimony, and reports from both the Police Department and the Department of Human Services," the court made findings regarding the seriousness of the

[6] Transcript of the transfer hearing on July 1, 1994 ["Tr."] at 10. The principal of Charlotte Amalia High School was also called by the Government and appellant offered the testimony of one of his teachers, an employer, and his mother.

[7] App. Q at 43. Another police officer, a Detective Rhymer, was also present to give testimony on this issue. Tr. at 61.

[8] App. Q at 66.

[9] The summary report of Officer Merlin Wade Christian recites that

[G.C.] and [M.B.] were hiding behind of a trailer on the Long Bay Road, Murray Callen and two other male friends Larry Cason and Mike Scaezler were walking past the trailer when [G.C.] and [appellant] jumped out from behind the trailer and confronted the three males. [G.C.] pointed a gun to the face of Murray Callen and demanded money. Callen hesitated and [G.C.] fired the weapon, shooting Callen in his chest. Callen died on the scene as a result of the gun shot wound. Both [G.C.] and [M.B.] fled the scene immediately after the shooting.

App. I at 1. The court read a portion of this into the record during colloquy with Government counsel. Tr. at 138.

[10] The written transfer order is at App. R.

alleged offenses, the aggressive, violent and premeditated manner the alleged offenses were committed against a person and not property, the probable cause to believe that the offenses were committed and that the minor committed them, the minor's maturity level as enabling him to act as an adult, his lack of earlier contact with juvenile court system, and his suitability for rehabilitation but the lack of sufficient time to accomplish rehabilitation since he was already eighteen at the time of the hearing.[11] M.B. appeals this transfer order.

## JURISDICTION

Before we can reach the merits of appellant's contentions, we must first establish our jurisdiction to review this transfer order, which on its face has all the characteristics of an ordinarily nonappealable interlocutory order. Although the breadth of the language in the statute granting the Appellate Division jurisdiction to review of the "judgments and orders" of the Territorial Court would appear to include the authority to review interlocutory orders,[12] the Appellate Division has interpreted this language, with a few exceptions, to mean "final decisions."[13]

■■ Fortunately, the Virgin Islands Legislature has provided specific authority for appeals of certain juvenile transfer decisions. When we look to the statute which provides for the juvenile

---

[11] The court also rendered oral findings on the seven statutory factors from the bench at the conclusion of the hearing. Tr. at 147-55.

[12] The Virgin Islands Legislature is authorized by section 23A of the Revised Organic Act of 1954, 48 U.S.C.§ 1613a(a), to prescribe our appellate jurisdiction. The Revised Organic Act of 1954 may be found at 48 U.S.C §§ 1541-1645 (1995), *reprinted in* V.I. Code Ann., Historical Documents, 73-177 (codified as amended) (1995) ["Revised Organic Act"]. This authority is contained in V.I. Code Ann. tit. 4, § 33, which pertinently provides that the

district court has appellate jurisdiction **to review the judgments and orders** of the territorial court in all civil cases, in all juvenile and domestic relations cases .... Appeals in civil, juvenile and domestic relations cases may be taken by any party aggrieved by the judgment or order appealed from, but in juvenile and domestic relations cases they may be taken only if specially allowed by the district court.... (emphasis added).

[13] *E.g., Government of the Virgin Islands v. DeJongh,* 28 V.I. 153,163-64 (D.V.I. App. 1993) (The scope of the broad appellate jurisdiction granted the Appellate Division in 5 V.I.C. § 33 has been judicially narrowed "to include only appeals from final judgments or orders," or from certain other orders of the Territorial Court specifically allowed by rule or statute).

123

transfer procedures in the Family Division of the Territorial Court, we find that, as of April 10, 1994, the date of the offenses charged here, the statute defined two general bases for the transfer for criminal prosecution of a sixteen or seventeen year-old child accused of an offense which would be a felony if committed by an adult ["felony-type offense"]. *See* V.I. CODE ANN. tit. 5, § 2508.[14] Upon a determination of probable cause, the Family Division **was required** to transfer such a child for criminal prosecution if (1) the child twice previously has been adjudicated responsible for a felony-type offense, or (2) the felony-type offense presently charged is one of the defined violent crimes, *e.g.*, murder or attempted murder, rape, robbery, and the child once previously has been adjudicated responsible for a felony-type offense, or (3) the child once previously has been adjudicated responsible for one of the defined violent felony-type offense (listed in subsection 2508(c)) — the so-called 'mandatory transfer' of subsection 2508(b). Transfer of any other sixteen or seventeen year-old child for criminal prosecution was a 'discretionary transfer' and covered all felony-type offenses (subsection 2508(a)), and a subset of some of the defined violent offenses, *e.g.*, murder, rape, robbery, burglary and arson, all in the first degree, for which the Government could move to transfer within five days of the filing of the juvenile complaint (subsection 2508(d)). It is only for the discretionary transfers that the Police Department and DHS had to submit summary reports to the court and the juvenile (*id.* § 2509(e)) and the judge had to consider and evaluate seven specified factors (*id.* §§ 2509(c) & (d)). Further, it is only an order transferring a child who for the first time had been charged with one of the subset of certain of the defined violent offenses which was deemed at that time to be a "final appealable order." *Id.* § 2508(d). Since M.B. is a child who had no previous encounter with the juvenile justice system, and was seventeen at the time he was charged with committing two of the violent felony-type offenses on April 10, 1994, namely, murder and robbery in the first degree, the order

---

[14] Although the transfer provisions were amended May 2, 1994, to reduce the age from sixteen or seventeen to fourteen, the earlier versions apply to this case since the alleged offenses took place in April of 1994. *See* Act of May 2, 1994, No. 5973, §§ 3(a)-(d), 1994 V.I. Sess. Laws 55-56.

transferring him for prosecution as an adult is a final appealable order over which we clearly have jurisdiction.[15]

## ISSUES AND STANDARD OF REVIEW

The appellant contends that the lower court effectively failed to give him a hearing on one of the critical factors relevant to the transfer of a juvenile, namely, whether there was probable cause to believe he committed the offenses charged, and that the court abused its discretion by taking judicial notice and basing its consideration of this factor on the finding of probable cause at the initial hearing when appellant was advised of his rights, without being represented by counsel. Findings of fact shall be upheld unless clearly erroneous. 4 V.I.C. § 33. Although evidentiary rulings are reviewed under an abuse of discretion standard, pure questions of law are subject to plenary review. See *Nibbs v. Roberts*, 31 V.I. 196, 204 (D.V.I. App. 1995); *In re Barrett*, V.I. BBS 91CI159A.DX2 (D.V.I. App. Jan 31, 1995).[16]

---

[15] Whether we would have jurisdiction to review a mandatory transfer order pursuant to 5 V.I.C. § 2508(b) or a general discretionary transfer order under 5 V.I.C.§ 2508(a) is not before us. Similarly, since we have been given express authority by the local legislature to review the transfer order in this case, it is not necessary to found jurisdiction on the collateral order doctrine. *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)(to be reviewable as a 'collateral order,' an otherwise interlocutory order "must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment.");*In re A.M.*, 30 V.I. 442, 445-46, 34 F.3d 153, 155-56 (3d Cir. 1994); *cf. Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799-800 (1989) (collateral order exception interpreted "with the utmost strictness' in criminal cases"; "effectively unreviewable" means a right not to be tried at all, not merely a right not to be convicted).

[16] M.B. also argues that the court abused its discretion in basing its finding that the seriousness of the offense required waiver of juvenile jurisdiction on unreliable hearsay and in finding that there would not be sufficient time in the juvenile system for him to be rehabilitated, challenging the sufficiency of the summary reports submitted to the court pursuant to 5 V.I.C. § 2509(e). We find that the reports of the Police Department and DHS, however, adequately covered all the factors the judge was required to consider. Appellant's further contention that the DHS had to investigate the availability of rehabilitative facilities outside of the Virgin Islands has been rejected. *See In re A.M.*, 30 V.I. at 448-49, 34 F.3d at 157 (The burden of bringing to the court's attention the availability and adequacy of rehabilitative facilities outside the Territory is on the minor and his attorney.) Since M.B. failed to identify such outside facilities, the judge appropriately limited his consideration to those facilities and programs brought to his attention by DHS.

In addition to the motion to strike the transfer summary and for the Family Division to retain jurisdiction, M.B. had also filed motions to interview witnesses, to appoint investi-

## DISCUSSION

Appellant correctly maintains that he, as a minor, is guaranteed certain procedural safeguards and protections. Although the Family Division's determination to relinquish jurisdiction over a juvenile is a "critically important proceeding" in which the procedures at a juvenile transfer hearing must "measure up to the essentials of due process and fair treatment," it does not have to encompass "all of the requirements of a criminal trial or even of the usual administrative hearing." *Kent v. United States*, 383 U.S. 541, 560-562 (1966).

It has recently been settled that hearsay is admissible to establish probable cause in a juvenile transfer hearing under Virgin Islands law. In re A.M., 30 V.I. 442, 453-54, 34 F.3d 153, 161 (3d Cir.)[17] Picking up on a possible exception to this rule of general admissibility, appellant argues that hearsay is not admissible if it violates the juvenile's right to confrontation, relying on *O.M. v. State,* 595 So.2d 514 (Ala. Crim. App. 1991), *cert. quashed*, 595 So.2d 528 (Ala. 1992), a state court decision cited in *In re A.M.*, 30 V.I. at 454, 34 F.3d at 161. Whatever viability this proposition of law may have in the Virgin Islands, an issue we do not here decide, it is inapplicable to the facts of this case. Subsection 2509(c) requires that the judge "conduct a hearing on each of the factors relevant to transfer," and make findings with respect to each of the factors set forth in subsection (d) of this section.[18] The essence of appellant's argument is that, at this hearing, the Family Division judge must

---

gators, for a continuance, to compel discovery, and to suppress his confession, all of which were denied by the court. These issues are outside the scope of the merits of the transfer order and are therefore not reviewable at this time.

[17] The Federal Rules of Evidence, and, absent an express rule or provision in the law or the rules to the contrary, the Federal Rules of Criminal Procedure, apply to proceedings in the Territorial Court. *See* Terr. Ct. R. 7. We are thus bound by the interpretation of these federal rules by the United States Court of Appeals for the Third Circuit, even though these rules are being applied in a context of purely local, Virgin Islands substantive law. *See HOVIC v. Richardson*, V.I. BBS 93CI261A.DX1 (D.V.I. App. June 20, 1995), *amended* V.I. BBS 93CI261A.DX3 (D.V.I. App. Aug. 11, 1995).

[18] Section 2509(d) requires the Court hearing a discretionary transfer motion to consider evidence of the following seven factors:

1) the seriousness of the alleged offense to the community and whether the protection of the community requires waiver;

2) whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;

receive testimony from a live witness on all seven factors, including probable cause. We disagree.

 Section 2509(e) mandates that before the hearing on the motion to transfer,

> a study and a report to the court, in writing, relevant to the [first four] factors in subsection (d) … shall be made by the U.S. Virgin Islands Police Department (V.I.P.D.), and [the last three factors] … by the [DHS]. The child or his parents, or other person responsible for his care, or his counsel shall have the right to examine these reports prior to the hearing and **to question the parties responsible for them at the hearing.**

5 V.I.C. § 2509(e)(emphasis added). What is thus required is that the child, his parents, or his counsel have the right to question the parties responsible for the summary reports from the police and DHS at the hearing, not that the parties responsible for the reports must give live testimony. Here, the trial judge examined and considered the transfer summary reports submitted by the Police Department and the DHS, and the juvenile officer who wrote the police report was available for questioning at the transfer hearing, which is all subsection 2509(e) requires.[19] Appellant, however, elected not to exercise his right to cross-examine the officer who prepared the police summary. Having had the opportunity to confront and cross-examine the juvenile officer, M.B. cannot now complain that he was denied his right to confrontation on the question of probable cause. Nor can appellant complain that the

---

3) whether the alleged offense was against property, greater weight being given to offenses against persons, especially if personal injury resulted;

4) whether there is probable cause to believe that the offense charged has been committed and that the child has committed it;

5) the sophistication and maturity of the child as determined by consideration of his home, emotional attitude and pattern of living;

6) the record and previous history of the juvenile, including previous contacts with the Youth Services Administration, law enforcement agencies and courts, and prior periods of probation or prior commitments to residential institutions;

7) the prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the child, if found to have committed the alleged offenses.

5 V.I.C. § 2509(d).

The Youth Services Administration named in subsection 2509(d) is now the Department of Human Services. *See* 3 V.I.C. § 437.

[19] Tr. at 43, 61.

judge relied in part on his recollection of the initial hearing as a basis to find probable cause at the transfer hearing, since the court did not rely **solely** on an earlier hearing at which appellant did not have the opportunity to cross-examine witnesses who testified. We find no error or abuse of discretion in the **additional** reliance by the trial judge on his recollection of the basis for his finding of probable cause when he advised appellant of his rights at a time M.B. was without counsel.

## CONCLUSION

Appellant has failed to demonstrate that any error or abuse of discretion was committed by the judge when he ordered transfer of M.B.'s case for criminal prosecution as an adult. To the contrary, the judge clearly and unequivocally described the factors that he considered in determining that transfer was appropriate. The decision of the Family Division of the Territorial Court ordering transfer of jurisdiction over appellant to the Criminal Division is affirmed. An appropriate order follows.

## ORDER

AND NOW, this 8th day of December, 1995, after careful review of the record and having considered the submissions and arguments of the parties; and for the reasons set forth in the Court's accompanying Opinion of even date;

IT IS ORDERED:

THAT the Territorial Court's Order dated July 14, 1994, is AFFIRMED.

## ORDER AMENDING OPINION

IT IS HEREBY ORDERED that the published Opinion filed in this case on December 8, 1995, be amended *nunc pro tunc* as follows:

The third sentence in footnote 17 shall be deleted. Citation to *HOVIC v. Richardson* shall remain intact.